IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 3:19-CR-290 (JCH) |
| v. | |
| DIAVION HUTCHINGS | September 24, 2020 |

GOVERNMENT'S NOTICE RE: FACEBOOK LIVE VIDEO

On September 18, 2020, the Court issued a notice to counsel, ordering the Government to produce the Facebook Live video referenced in paragraph 11 of the Presentence Report. Paragraph 11, which was derived from the criminal complaint, reads as follows:

> On April 30, 2019, a cooperating witness (CW) stated he/she personally observed a Facebook Live video conducted by Ms. Hutchings under the screen name "Kendall Ny'zair." Ms. Hutchings posted a Facebook Live video showing screenshots of the victim's recorded interview with two NHPD detectives. The CW also stated Ms. Hutchings made threatening statements, including "I have [redacted name]'s Pole" and "I'm going to start shooting bitches." According to the case agent, Ms. Hutchings was referring to her boyfriend and "pole" is a common street term for a firearm.

For reference, the criminal complaint affidavit, on which the United States Probation Officer relied in preparing the offense conduct, has two paragraphs that relate to the CW's information. Paragraph 15 reads, in pertinent part, as follows:

> On April 30, 2019, ATF S/A Scott Riordan and ATF S/A Christopher Rettig conducted an interview of a cooperating witness (CW) regarding the aforementioned Facebook Live video. The CW state that the CW personally observed the Facebook Live video on Sunday, April 28, 2019. The CW state that DIAVION HUTCHINGS under the screen name "Kendall Ny'zair," posted a Facebook Live video showing screenshots of [Person #1]'s recorded interview (similar to the above). The CW also stated that DIAVION HUTCHINGS was making threatening statements, including that "I have [redacted]'s Pole" and "I'm going to start shooting bitches." . . . According to

> the CW, another individual told the CW that DIAVION HUTCHINGS went to [redacted name]'s defense attorney's office, saw [Person #1]'s recorded interviews with the police, and took pictures of the interview video. I know, based upon my training and experience, that the Facebook Live feature is often used on a mobile device and that Facebook Live videos can be saved on a mobile device.

Paragraph 29 of the complaint affidavit describes the relevant evidence discovered during a court-authorized search of Ms. Hutchings' cellular phone. Specifically, paragraph 29w states:

> Also located on DIAVION HUTCHINGS' phone were recordings of what appear to be two Facebook Live videos dated April 28, 2019. The timing and presence of these videos are consistent with the CW information I received on April 30, 2019, that is detailed above in paragraph 17,[1] although the video described by the CW does not appear to be saved on DIAVION HUTCHINGS' phone. Notably, in the video that the CW describes, DIAVION HUTCHINGS indicates that she has a gun and is going to start shooting people.

In sum, investigators learned that Ms. Hutchings had recorded and disseminated portions of Person #1's police interview from several sources, including by interviewing the CW. One of the platforms that Ms. Hutchings used to disseminate this information was Facebook Live, which, according to Facebook, "lets you live stream events, performances and gatherings on Facebook. Viewers can watch from a phone, computer or connected TV. You can go live on Facebook from a profile, Page, group or event." *See* https://www.facebook.com/help/931327837299966/?helpref=hc_fnav, last visited September 21, 2020.

---

[1] This should have referenced paragraph 15, not paragraph 17.

**2**

As part of the investigation in this case, investigators obtained a search warrant for Ms. Hutchings' Facebook account. *See* 3:19mj715(SALM). That return contained records of messages, posts, and logins. While it did include some "linked media," *i.e.,* photographs and videos that Ms. Hutchings had sent and received to other Facebook users, it did not include all of the Facebook Live streaming broadcasts. In fact, the return only included one video that appeared to be a saved Facebook Live broadcast, which was approximately 2 minutes and 11 seconds in length and does not relate to the conduct charged in this case.

The videos that are referenced in the PSR and in the Government's sentencing memorandum were recovered from the search of Ms. Hutchings' phone, not from the return from the Facebook warrant. It appears that those two Facebook Live broadcasts were manually saved by Ms. Hutchings on her cellular phone. As noted in the complaint affidavit, *supra*, the video described by the CW did not appear to be saved on Ms. Hutchings' phone, nor did it appear on the Facebook search warrant return. Because Facebook Live users have to manually save their broadcasts once they are no longer live[2], it is the Government's belief that Ms. Hutchings never saved the video that the CW described.

---

[2] There are two ways that a Facebook user can save a Live broadcast on her account. The first is to add the video to her timeline, and the second is to save the video to the "Videos" folder in her account. It does not appear that Ms. Hutchings took either of these steps to save the video to her Facebook account, which explains why none of the relevant Live videos were contained in the Facebook return.

In sum, the Government does not agree with the defendant's assertions that she did not make the statements described by the CW. Rather, the Government believes that the video to which the CW referred was not manually saved to Ms. Hutchings' Facebook account nor her cellular phone, which explains why the Government did not recover that particular video during its investigation. Rather, the Government recovered two separate (but related) Facebook Live broadcasts from Ms. Hutchings' phone, which are the two videos described in the PSR. In any event, the Government is not offering the CW's account as proof that Ms. Hutchings actually made those statements. That information was included to explain the progression of the investigation into Ms. Hutchings' obstruction of justice, and to demonstrate that she had, in fact, broadcast information about Person #1's police cooperation on several different platforms, including Facebook Live.

For the Court's reference and review prior to sentencing, the Government will deliver to chambers, on the date of this filing, a disk containing the two recovered Facebook Live broadcasts that relate to the charges in this case.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY

*/s/ Maria del Pilar Gonzalez*
MARIA DEL PILAR GONZALEZ
ASSISTANT U.S. ATTORNEY
Fed Bar No. ct30716
157 Church Street, 25th Floor
New Haven, CT 06510
(203) 821-3747
pilar.gonzalez@usdoj.gov

## CERTIFICATION

I hereby certify that on September 23, 2020, a copy of the foregoing was filed electronically with the Court.

                                              */s/ Maria del Pilar Gonzalez*
                                              MARIA DEL PILAR GONZALEZ
                                              ASSISTANT UNITED STATES ATTORNEY